15089109.1 2-10

FILED

OCT 21 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

October 16, 2026

**VIA U.S. MAIL**

The Honorable Jeffrey S. White Senior United States District Judge United States District Court for the Northern District of California Oakland Courthouse, Courtroom 5 – 2nd Floor 1301 Clay Street Oakland, CA 94612

**Re: *United States v. Benjamin Kerensa*, Case No. 4:03-cr-00333-JSW Defendant's Reply to Government's Response (Dkt. 137) Regarding Termination of Restitution Liability Under 18 U.S.C. § 3613(b) and Motion for Protective Order Under 28 U.S.C. § 3013**

Dear Judge White:

Defendant respectfully submits this reply to the government's Response (Dkt. 137). Defendant respectfully requests that the Court consider this Reply.

For decades, federal collection units operated under a convenient legal fiction: "[l]oss of liberty was punishment," while "[m]oney was accounting." Duncan Levin, *When Money Becomes Punishment*, Yale J. on Reg.: Notice & Comment (Feb. 7, 2026) (analyzing *Ellingburg v. United States*, 607 U.S. 163 (2026)). On January 20, 2026, a unanimous Supreme Court abolished that fiction in *Ellingburg*, holding that restitution under the Mandatory Victims Restitution Act (MVRA) is "plainly criminal punishment." 607 U.S. at 163.

The government's Response reads as if *Ellingburg* never happened. Conceding that it "has not identified any case that addresses the specific issue raised by Defendant" (Dkt. 137 at 4:3–4), the government urges the Court to invent an unwritten rule that a subsequent revocation of supervised release wipes out the 20-year statutory repose clock under 18 U.S.C. § 3613(b) and restarts a brand-new 20-year period upon the defendant's "*last, and final,* release from imprisonment" (Dkt. 137 at 4:12–20). Why? Because, in the government's words, "it makes sense" for collection (Dkt. 137 at 4:16, 4:19).

In our constitutional system, the duration and terms of a criminal punishment are governed by the text enacted by Congress and the judgment entered by the Article III Judge—not by what "makes sense" to an Executive Branch collection unit two decades later. Under the plain text of Section 3613(b), the structure of Title 18, the rule of lenity, constitutional finality, and the unmodified boundaries of this Court's 2004 Judgment (Attachment A), Defendant's restitution liability terminated in late 2025.

Enforcement must stop.

## I. Restitution Liability Terminated in Late 2025 Under 18 U.S.C. § 3613(b) Because the 20-Year Clock Runs From the Imprisonment Imposed by the Judgment Ordering Restitution.

15089109.1.3-10

Section 3613(b) of Title 18 provides:

"The liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." 18 U.S.C. § 3613(b).

The timeline established by the government's own exhibits is undisputed:

- **November 4, 2004:** This Court entered the only Judgment ordering restitution ($47,452.92), sentencing Defendant to a 12-month term of imprisonment (Dkt. 137 at 7–8, 12 [Att. A, Dkt. 38]). Twenty years from the entry of judgment expired on **November 4, 2024**.
- **On or about November 2005:** Defendant completed and was released from that 12-month prison sentence—described by defense counsel in 2007 as "his 2005 release from the original prison term" (Dkt. 137 at 26:20–21 [Att. D, Dkt. 123])—and was "out for almost a month" prior to the December 2, 2005 violation date (Dkt. 137 at 29:25–28 [Att. D, Dkt. 123-1]; Dkt. 137 at 17 [Att. B]). Twenty years from that release from imprisonment expired **on or about November 2025**.

The government's theory that the 20-year clock reset to zero on August 28, 2007—when Defendant completed a subsequent 24-month supervised release revocation sentence imposed on February 24, 2006 (entered February 28, 2006) under 18 U.S.C. § 3583(e)(3) (Dkt. 137 at 2:3–6, 16–18 [Att. B, Dkt. 76])—fails across five independent pillars of law.

**1. Text and Structure: Section 3613(b) Measures From the Judgment Ordering Restitution, and Congress Intentionally Omitted Any Re-Imprisonment Tolling or Reset Clause.**

Section 3613(b) pairs two singular events in one clause: "the entry of judgment" and "the release from imprisonment of the person ordered to pay restitution". As the Third Circuit held in rejecting a government effort to reset the Section 3613(b) clock via a later resentencing judgment, "[t]he most natural reading of these provisions is that the judgment that created the lien... is the same one from which we measure the centralized twenty-year termination clock." *United States v. Norwood*, 49 F.4th 189, 209 (3d Cir. 2022). By parity of text, "the release from imprisonment of the person ordered to pay restitution" refers to the 12-month imprisonment imposed by the 2004 Judgment that ordered restitution (Attachment A)—not a 2006 revocation order (Attachment B) that mentions no restitution at all (Dkt. 137 at 16–18).

Nothing in Section 3613(b) mentions supervised release, revocation, or a "last, and final," release (Dkt. 137 at 4:13). And neighboring provisions of Title 18 prove that Congress's silence was intentional. In 18 U.S.C. § 3583(e)(3) and (h), Congress explicitly legislated for situations where a term of supervised release is "revoke[d]." Even more decisively, in **18 U.S.C. § 3624(e)**, Congress enacted an express re-incarceration tolling clause: *"A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime..."*

15089109.1.4-10

When Congress wanted a statutory clock in Title 18 to pause or reset upon subsequent re-imprisonment, it wrote an explicit re-imprisonment clause (§ 3624(e)). In Section 3613(b), it did not. "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

**2. Statutory Repose: The Government's "Interim Release" Theory Violates 18 U.S.C. § 3624(e) and Would Allow Perpetual Resetting of a 20-Year Cap.**

To evade Defendant's 2005 release, the government labels it an "interim release" that "was not permanent or final because he was returned to prison when his supervised release was revoked" (Dkt. 137 at 4:9–13).

First, federal law forecloses calling the 2005 release "interim." Under 18 U.S.C. § 3624(a) and (e), a prisoner is released upon the expiration of his term of imprisonment, and "[a] prisoner's term of supervised release commences on the day the prisoner is released from imprisonment." This Court's 2004 Judgment used those exact statutory words: *"Upon release from imprisonment, the defendant shall be on supervised release for a term of 3 years"* (Dkt. 137 at 9 [Att. A at 3]). By operation of Section 3624(e) and Attachment A, Defendant's 2005 release was a complete, statutory "release from imprisonment." Once that single statutory trigger occurred in 2005, the 20-year clock began to run.

Second, the government's "final release" rule is not a narrow tolling rule for the time spent in revocation custody—it is a total **reset button** that wipes out all prior post-release time and restarts a 20-year clock from zero. Because federal law authorizes multi-decade and lifetime terms of supervised release (e.g., 18 U.S.C. § 3583(k)), the government's theory means a defendant who pays restitution for 19 years after his initial release and then serves 10 days on a technical supervision violation in Year 19 would suffer a full 20-year reset—turning a 20-year statute of repose into a 39-year sentence.

**3. Precedent: Neither *Johnson* Nor the Unbriefed Assumption in *Delano* Supports Resetting a Section 3613(b) Clock.**

Conceding that no case adopts its rule, the government leans on *Johnson v. United States*, 529 U.S. 694, 700–01 (2000), which attributed post-revocation sanctions "to the original conviction" (Dkt. 137 at 4:3–7). *Johnson* resolved an *Ex Post Facto* Clause challenge to 18 U.S.C. § 3583(h) so that revocation penalties would not violate Double Jeopardy. 529 U.S. at 700–01. It never mentioned Section 3613(b), and its core logic—that everything anchors back to the original conviction—supports measuring Section 3613(b) from the original 2004 Judgment.

In Footnote 2, the government cites *United States v. Delano*, 981 F.3d 1136, 1139–40 (10th Cir. 2020), noting that the Tenth Circuit "appeared to assume that under the MVRA a restitution obligation would continue twenty years after the defendant's release from prison for a supervised release violation" (Dkt. 137 at 4 n.2). Confronting that footnote directly shows why *Delano* does not help the government:

15089109.1.5-10

- First, the defendant in *Delano* was sentenced prior to the 1996 enactment of the MVRA, under the pre-MVRA statute that terminated liability 20 years from the original judgment without *any* "release from imprisonment" clause (Dkt. 137 at 4 n.2).
- Second, what *Delano* actually held was that the MVRA did **not** apply to the defendant's case, reversing the district court for plain error because "[c]ourts have no inherent authority to order restitution; they may only do so as authorized by statute." 981 F.3d at 1139–41.
- Third, because the MVRA did not govern in *Delano*, the parties never briefed, and the Tenth Circuit never analyzed or decided, whether the MVRA's "release from imprisonment" clause refers to the initial prison sentence imposed with the restitution judgment or a subsequent revocation sentence. An unbriefed assumption about an inapplicable statute in an out-of-circuit opinion is not precedent. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006).

**4. Constitutional Finality, Proportionality, and Lenity: Under *Ellingburg* (2026) and *Bajakajian* (1998), Criminal Punishment Cannot Be Extended by Implication.**

In *Ellingburg v. United States*, 607 U.S. 163 (2026), the Supreme Court held that MVRA restitution is **"plainly criminal punishment."** And in *United States v. Bajakajian*, 524 U.S. 321, 334–38 (1998), the Court held that punitive monetary exactions in criminal proceedings are constrained by the Eighth Amendment's proportionality mandate. *See* Levin, *supra* ("Once money is recognized as punishment, courts cannot avoid the constitutional questions that follow. The Eighth Amendment is implicated. Due process is implicated.").

Three constitutional consequences follow directly from *Ellingburg* and *Bajakajian*:

- **The Rule of Lenity:** Because MVRA restitution is criminal punishment, any ambiguity in Section 3613(b)'s temporal cap must be construed strictly against the government and in favor of repose.
- **Proportionality and Finality of Punishment:** Resetting a 20-year criminal punishment clock past 20 years post-judgment and post-initial release converts a fixed statutory cap into an open-ended penal exaction, raising grave Eighth Amendment and Fifth Amendment finality doubts that strict adherence to the text avoids.
- **Due Process Notice and Transparency:** At no time during the 2004 plea negotiations, the November 4, 2004 sentencing, or the February 24, 2006 revocation hearing did the government or the Court disclose or assert that revoking supervised release would silently reset the 20-year restitution clock under Section 3613(b). A defendant has a constitutional right to transparent notice of the full scope of criminal punishment before entering a plea or admitting a supervision violation.

**5. Contemporaneous Administrative Construction: The Bureau of Prisons Recognized That the 2004 Judgment Excluded Collection During Revocation Custody.**

To the best of Defendant's knowledge and recollection, while he was incarcerated on the revocation sentence at USP Lompoc in 2006–2007, the Bureau of Prisons (BOP) did not

15089109.1.6-10

automatically deduct restitution from his inmate account deposits. The BOP recognized what the plain text of this Court's 2004 Judgment (Attachment A) commanded: restitution was **not** checked as "due immediately," and payments were strictly limited to the period of "Supervised Release" (Dkt. 137 at 12–13). Neither the BOP nor the Financial Litigation Program (FLP) may unilaterally depart from the language of the Judgment.

## II. In the Alternative, the Unmodified 2004 Judgment and the 2007 Payment Arrangement Do Not Authorize Post-2025 Acceleration, Warranting a Protective Order Under 28 U.S.C. § 3013.

Even if Section 3613(b) had not expired in late 2025, the government's own Response and exhibits establish that its current enforcement demands exceed the unmodified 2004 Judgment (Attachment A) and the 2007 payment arrangement (Attachment E), warranting a protective order under **28 U.S.C. § 3013** (authorizing the Court under the Federal Debt Collection Procedures Act to "at any time on its own initiative or the motion of any interested person... make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure").

**1. The Court Never Modified the 2004 Judgment Schedule, Which Did Not Make Restitution "Due Immediately" and Limited the Schedule to "During Supervised Release."**

In September 2007, when Defendant moved to modify the restitution schedule under 18 U.S.C. § 3664(k), the government opposed modification, calling the request "at best premature since he was just released from custody and has not defaulted on the restitution order," and urging compliance with "the previously imposed payment schedule of $5 a month" (Dkt. 137 at 2:7–8; Att. C at 22–23). Subsequently, after the government submitted its September 27, 2007 letter (filed October 1, 2007, Att. E at 34–35), **"On October 10, 2007, after receiving the government's letter, the Court denied Defendant's motion as moot. Dkt. No. 128"** (Dkt. 137 at 3:1–2).

Because only an Article III judge can set or modify a restitution schedule under the MVRA (*United States v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2005)), and because this Court denied the 2007 motion as moot without entering an amended judgment (Dkt. 128; Dkt. 137 at 3:1–2), the November 4, 2004 Judgment (Attachment A) remains the sole judicial restitution order in this case. Sheet 6 of that Judgment (Dkt. 137 at 12–13, Att. A) is explicit:

- On page 12, the Court marked only the $100 Assessment with **two asterisks** (`$ 100**`), corresponding to `**Due immediately`.
- By contrast, the Court marked the $47,452.92 Restitution with **three asterisks** (`$ 47,452.92***`), corresponding exclusively to: `***Minimum payment of $5.00 per month during Supervised Release. Amount of minimum payment may be adjusted at the probation officer's discretion.`

15089109 1 7-10

- On page 13 (Schedule of Payments), the Court deliberately left Boxes A and B ("due immediately") **unchecked**, and checked **only Box F**, repeating: *"Minimum payment of $5.00 per month during Supervised Release"*.
- On February 24, 2006, when this Court revoked supervised release and imposed 24 months of imprisonment (Attachment B, Dkt. 137 at 16–18), the Court **imposed no new term of supervised release.**

Under binding Ninth Circuit precedent, where a criminal judgment does **not** make restitution "due immediately" and specifies payments only during supervision, the government cannot unilaterally accelerate the balance or manufacture a default outside that judicial schedule (*United States v. Holden*, 908 F.3d 395, 403–04 (9th Cir. 2018)).

**2. The 2007 Payment Arrangement (Attachment E) Could Not Extend Liability Beyond Section 3613(b), and the Government Should Be Required to Account for Its Balance Calculation and 2026 Collection Activity.**

In the September 27, 2007 letter (filed October 1, 2007, Dkt. 137 at 34–35 [Att. E, Dkt. 126]), the government advised the Court that the FLU and Defendant's counsel had negotiated a payment arrangement under which: (1) Defendant would pay $5 a month for each month in which he worked outside his home at least 10 days; (2) Defendant would notify the USAO of material changes in his economic circumstances; and (3) the USAO would not impose default or delinquency penalties without first contacting Defendant or his counsel to inquire into mitigating circumstances or renegotiation (Dkt. 137 at 34).

First, while that 2007 agreed arrangement resolved Defendant's pending § 3664(k) motion during the life of the restitution obligation (Dkt. 137 at 3:1–2, 34–35), an agreement regarding monthly installment terms cannot override or extend the mandatory 20-year statutory termination ceiling in 18 U.S.C. § 3613(b). *See Delano*, 981 F.3d at 1140–41 (restitution authority is strictly bounded by statute). When the 20-year clock expired on or about November 2025, both the underlying restitution liability and the government's authority to pull Defendant's credit report in **2026** (Dkt. 137 at 3:17–18; *see* 15 U.S.C. § 1681b(a)(3)(A)) or threaten administrative subpoenas on **February 13, 2026** (Dkt. 137 at 3:18–20, 37 [Att. F]) terminated by operation of law.

Second, even if the Court does not terminate liability on the current record, protective relief and a formal accounting under 28 U.S.C. § 3013 are warranted. The 2004 Judgment ordered **$47,452.92** in restitution principal (alongside the $100 assessment and standard payment-application priority including restitution interest, Dkt. 137 at 12–13 [Att. A]), and in September 2007 the government confirmed on the record that Defendant "has not defaulted on the restitution order" (Dkt. 137 at 23:7–8 [Att. C]). Yet the February 13, 2026 letter states a "Current Balance: **$50,164.29** plus interest at **2.53%**" (Dkt. 137 at 37 [Att. F]). Before any subpoenas or debtor examinations proceed, the government should be required to produce a complete payment, principal, and interest ledger substantiating how the $50,164.29 figure was calculated and demonstrating that its enforcement complies with the 2004 Judgment and the 2007 arrangement.

15089109 1 8-10

## III. Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court enter the attached Proposed Order declaring Defendant's restitution liability terminated under 18 U.S.C. § 3613(b), or in the alternative, granting a protective order under 28 U.S.C. § 3013 quashing all threatened subpoenas and requiring a full accounting.

Respectfully submitted,

**Benjamin Kerensa**

## [PROPOSED] ORDER

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA OAKLAND DIVISION**

**UNITED STATES OF AMERICA,** Plaintiff, v. **BENJAMIN KERENSA,** Defendant.

**Case No. 4:03-cr-00333-JSW [PROPOSED] ORDER TERMINATING RESTITUTION LIABILITY UNDER 18 U.S.C. § 3613(b) OR, IN THE ALTERNATIVE, GRANTING PROTECTIVE ORDER UNDER 28 U.S.C. § 3013**

Having considered Defendant's correspondence regarding the termination of restitution liability (Dkt. 133, 135), the government's Response and Attachments A through F (Dkt. 137), and Defendant's Reply, and good cause appearing therefor:

**IT IS HEREBY ORDERED** that:

1. **(Primary Relief — Termination of Liability Under 18 U.S.C. § 3613(b)):** Pursuant to 18 U.S.C. § 3613(b), "the release from imprisonment of the person ordered to pay restitution" refers to Defendant's 2005 release (on or about November 2005) from the 12-month term of imprisonment imposed by the November 4, 2004 Judgment that ordered restitution (Dkt. 137 at 7–13, Att. A; Dkt. 137 at 26, 29, Att. D), and not to his subsequent release from supervised release revocation custody. Because more than 20 years have elapsed since both the November 4, 2004 entry of judgment and Defendant's 2005 release from imprisonment, Defendant's liability to pay restitution terminated by operation of law under 18 U.S.C. § 3613(b) in late 2025. Furthermore, under the rule of lenity, the Supreme Court's decisions in *Ellingburg v. United States*, 607 U.S. 163 (2026) and *United States v. Bajakajian*, 524 U.S. 321 (1998), the contrast with 18 U.S.C. § 3624(e)'s explicit re-imprisonment tolling clause, the contemporaneous administrative construction by the Bureau of Prisons, Fifth Amendment due process notice requirements, and the unmodified terms of the 2004 Judgment (which did not make restitution "due immediately" and limited the court-ordered payment schedule to the period of supervised release, Dkt. 137 at 3, 12–13), any ambiguity must be resolved in

15089109.1.9-10

favor of Defendant. The United States Attorney's Office and its Financial Litigation Program are directed to cease all restitution collection, credit inquiries, and enforcement efforts in this case and to close the restitution account.

2. **(Alternative Relief — Protective Order Under 28 U.S.C. § 3013 and Accounting):** *[In the alternative, if the Court does not terminate liability on the current record:]* Pursuant to 28 U.S.C. § 3013 and the Court's supervisory authority over its 2004 Judgment (Dkt. 137 at 12–13, Att. A) and the 2007 payment arrangement (Dkt. 137 at 34–35, Att. E), all threatened administrative subpoenas and judgment debtor examinations referenced in Attachment F (Dkt. 137 at 37) are **QUASHED and STAYED**. Within 21 days of this Order, the government shall file and serve a supplemental accounting establishing: (a) Defendant's certified Bureau of Prisons release dates for both the 2004 sentence and the 2006 revocation sentence; and (b) a complete payment, assessment, principal, and interest ledger explaining how the $47,452.92 restitution principal in Attachment A (Dkt. 137 at 12–13) was calculated as "$50,164.29 plus interest at 2.53%" in Attachment F (Dkt. 137 at 37). The Defendant is appointed counsel for further response.

**IT IS SO ORDERED.**

Dated: _________________, 2026

HONORABLE JEFFREY S. WHITE Senior United States District Judge

15089109.1 10-10

**CERTIFICATE OF SERVICE**

I, hereby certify that on October 16, 2026, I served a true and correct copy of the foregoing **Defendant's Reply to Government's Response (Dkt. 137) Regarding Termination of Restitution Liability Under 18 U.S.C. § 3613(b) and Motion for Protective Order Under 28 U.S.C. § 3013** (and accompanying Proposed Order) upon counsel for the Plaintiff, United States of America, via electronic mail to:

**Noah Stern** Assistant United States Attorney United States Attorney's Office, Northern District of California 450 Golden Gate Avenue, Box 36055 San Francisco, CA 94102-3495 Email: **Noah.Stern@usdoj.gov**

*(Note: If also submitting via the Court's Electronic Document Submission System (EDSS) or U.S. Mail, counsel is additionally served automatically via the Court's CM/ECF system upon docketing).*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2026, at Seaside, Oregon.

**Benjamin Kerensa**

15089109.1.1-10

Benjamin Kerensa
PO BOX 178
Seaside OR 97138

**USPS CERTIFIED MAIL**

9214 8901 4298 0406 3208 26

0015089109000011
Ronald V. Dellums Federal Building
Clerk of Court
1301 Clay Street
Suite 400
Oakland CA 94612
USA

CERTIFIED MAIL™

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM

005

RECEIVED

OCT 21 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SUSTAINABLE FORESTRY INITIATIVE Certified Sourcing
www.sfiprogram.org
SFI-00411

**Responsibly Sourced. Thoughtfully Delivered.**
This envelope is made with responsibly sourced paper
to support more sustainable direct mail.

10-CERTPRESORT